AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

**SEALED**

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  '22 MJ03598 |
| 1418 Helix Street, Spring Valley, California 91977 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC s. 922(a)(1)(A), 922(a)(3), and 922(g)(1) | Engaging in the Business of Distributing Firearms without a License; Unlicensed Transportation of Firearms; Felon in Possession of a Firearm |

The application is based on these facts:

See attached Affidavit of ATF SA J. Scott Wakelin, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

J. Scott Wakelin, ATF Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:  ____10/03/2022____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Daniel E. Butcher, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, J. Scott Wakelin, being duly sworn, declare and state:

## INTRODUCTION

1.     This affidavit is made in support of an application to search the following residence and vehicle described as follows:

      a)  1418 Helix Street, Spring Valley, California 91977, located within the Southern District of California ("**Target Location 1**"), and currently occupied by Jarez ROBERTS. Search of **Target Location 1** is to include the garage and any attached storage structure or container found upon the residence's curtilage as well as ROBERTS' person;

      b)  2015 Nissan sedan bearing California license plate number 7MWA150 ("**Target Vehicle 1**"), used by Jarez ROBERTS;

as further provided in Attachments A-1 and A-2, for evidence of violations of Title 18, United States Code, Sections 922(a)(1)(A), 922(a)(3), and 922(g)(1) (Engaging in the Business of Distributing Firearms without a License; Unlicensed Transportation of Firearms; Felon in Possession of a Firearm, respectively).

2.     As explained below, between June 2022 and August 2022, former San Diego resident Lillian SHINGLETON, purchased a total of eleven handguns from gun stores in Arizona.  One of the handguns purchased in August 2022 was recovered by law enforcement in San Diego two days after it was purchased. The handgun was found immediately adjacent to **Target Vehicle 1**, which is currently registered to Jarez ROBERTS at **Target Location 1**.  A subsequent investigation by the ATF San Diego Field Office determined that **Target Vehicle 1** completed trips from California to Arizona and back on and around the same days SHINGLETON purchased the handguns in Arizona. Further, toll records show ROBERTS and SHINGLETON were in communication on and around the dates of the firearm purchases. Only one of the eleven handguns have been recovered thus far, and the precise whereabouts of the remaining ten handguns is presently unknown. For the reasons

set forth below, I believe there is probable cause that the items set forth in Attachment B will be found in **Target Location 1** and **Target Vehicle 1**.

## TRAINING AND EXPERTISE

3.     I am a Special Agent (SA) employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed for twenty-two years.

4.     I am currently assigned to the San Diego, California Field Office. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. As a result of my training and experience as an ATF Agent, I am familiar with federal and state criminal laws.  My primary duties have been the enforcement of federal firearm, arson and explosive laws.  I have participated in numerous investigations that involved the illegal acquisition of firearms and possession of firearms by prohibited persons.  I have participated in investigations that involved interstate and international firearms trafficking.  I have also participated in the searches of numerous residences and businesses involving federal and state firearms violations.

5.     The facts set forth in this affidavit are based on: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## PROBABLE CAUSE

*FACTS KNOWN BASED UPON MY TRAINING AND EXPERIENCE*

6.     Based on my training and experience, consultation with other agents from ATF, and all of the facts and opinions set forth in this affidavit, I believe as follows:

2

a.  It is common for individuals who illegally acquire and possess firearms, to keep firearms and documents related to the acquisition and disposition of firearms on their person, in their vehicles, and in their residences for an indefinite period of time;

b.  It is common for individuals who possess firearms (whether lawfully or unlawfully) to possess items relating to those firearms, which includes ammunition, magazines, holsters, gun boxes, spare parts, cleaning equipment, periodicals, photographs of firearms and receipts for the purchase and repair of those items on their person, in their vehicles, and in their residences;

c.  It is common for individuals involved in the unlawful acquisition, transportation, importation, possession or transfer of firearms to hide their activities from law enforcement.  Therefore, these individuals go through surreptitious means to acquire, possess, transport, transfer or sell firearms without complying with federal and state law.

d.  Pursuant to Title 27, Code of Federal Regulations, Chapter II, Part 478.111, it is unlawful for any person, other than Federal Firearms Licensee (FFL), to transport into or receive in the State where the person resides any firearm purchased, or otherwise obtained by the person, outside of that State.

e.  Additionally, based upon prior searches of premises used by individuals involved in the illegal importation of firearms, I believe it is common to find articles of personal property and documents evidencing the identity of persons occupying, possessing, residing in, owning, frequenting, or controlling the premises associated to those individuals.  I also believe that persons who possess firearms (whether lawfully or unlawfully) sometimes keep them for their personal use.

f.  It is common for individuals involved in the illegal acquisition and importation of firearms to travel outside of their state of residency in order to obtain firearms from out of state firearm sources.

3

g.  It is common for persons involved in the illegal acquisition, transportation, and/or trafficking of firearms to obtain firearms from individuals in states known to have "less restrictive" firearms laws regarding private party transfers and multiple firearms purchases.  These States are known to the ATF law enforcement community as "source States" such as Arizona, Nevada, and Texas.   Typically these individuals travel to "source States" and acquire firearms through private party transfers with individuals in that state.  Often times these private party transactions are negotiated prior to the transfer via internet-based private party firearm sale websites and/or between these individuals and their friends or family members who may reside in a "source State".  These firearms are then often brought back to the purchaser's true State of residency to be placed into their own personal inventory or sold to other individuals.

h.  It is common for individuals involved in the illegal acquisition and importation of firearms to communicate with co-conspirators, both known and unknown, electronically, both on cell phones or other devices capable of storing electronic data, i.e. laptop/desktop computers. I further know that these digital devices, including cell phones, often contains electronic data that evidences the crimes listed above in the weeks and months before a firearm transaction, and in the weeks and months after a firearm transaction.

i.  It is common for persons involved in the illegal transportation and acquisition of firearms to also be prohibited from possessing firearms due to a felony conviction.  Members of criminal street gangs, such as the Skyline Piru Bloods, are also commonly known to have prior felony convictions that prohibit them from legally purchasing firearms from FFLs.   Therefore, these same individuals seek out individuals trusted friends or family of fellow gang members that are not prohibited from purchasing firearms and willing to acquire firearms for those gang members.  These individuals are referred to as

4

straw purchasers and are typically residents of states with less restrictive firearm purchase laws such as Arizona.

*SPECIFIC FACTS DEMONSTRATING PROBABLE CAUSE*

7.     On September 7, 2022, investigators initiated a query in the ATF National Trace Center (NTC) database which revealed that a 9mm handgun purchased at Federal Firearms Licensee (FFL) Randall's Sporting Goods in Glendale, Arizona on August 20, 2022, was recovered by the San Diego Police Department (SDPD) on August 22, 2022. Investigators learned the handgun was found in a dumpster located at the apartment complex at 6422 College Grove in San Diego. A resident of the complex found the handgun while discarding trash. SDPD was notified, responded to the location, and took custody of the handgun. The handgun was found to be loaded with eight rounds of ammunition and was identified as a 9mm SCCY, model CPX-2 handgun, SN C300655.

8.     Investigators queried the recovered handgun in the ATF NTC database, which identified it as one of four handguns purchased by former San Diego resident Lillian SHINGLETON.  A query of SHINGLETON in the same database revealed that she has purchased eleven handguns to date, as further listed below. For each purchase listed below, SHINGLETON presented AZ ID D06851710 and listed her address as 201 W Hermosa Drive #CW104 in Tempe, Arizona.

06/06 & 06/07/2022- FFL Shooter's World in Phoenix, AZ
- Taurus     G2C     9mm     SN: 1C116279    Outstanding
- Taurus     G2C     9mm     SN: 1C116272    Outstanding

06/07/2022- FFL Randall's Sporting Goods in Glendale, AZ
- Taurus     G2C     9mm     SN: ADC025933 Outstanding
- Taurus     G2C     9mm     SN: ADC026031 Outstanding

06/18/2022- FFL Randall's Sporting Goods in Glendale, AZ
- Taurus     G2C     9mm     SN: ADB016232 Outstanding
- Taurus     G2C     9mm     SN: 1C122764     Outstanding
- Hi-Point   C9      9mm     SN: P10160194   Outstanding

08/20/2022- FFL Randall's Sporting Goods in Glendale, AZ

- SCCY              CP-2              9mm         SN: C300655      **Recovered 8/22/2022**
- SCCY              CP-2         9mm         SN: C305905   Outstanding
- Hi-Point    JHP         .45 Cal          SN: X4387321   Outstanding
- Hi-Point    JCP         .40 Cal          SN: X7301417   Outstanding

9.      On or about September 7, 2022, investigators interviewed the leasing manager at the apartment complex located at 6422 College Grove in San Diego. The manager said that approximately one hour prior to the handgun being discovered, **Target Vehicle 1** was found abandoned in front of the dumpster area. At the request of the leasing manager, **Target Vehicle 1** was towed by Western Towing to their tow yard on El Cajon Boulevard.

10.     Investigators queried **Target Vehicle 1** which revealed ROBERTS to be its sole registrant, and that it was registered to **Target Location 1**.  Investigators further queried law enforcement databases to learn that ROBERTS is a multi-convicted felon and known Skyline Piru Blood gang member. ROBERTS' criminal history includes several firearms related arrests and convictions to include, carjacking, carriage of a loaded firearm, felon in possession of a firearm, possession of a controlled substance while armed, burglary, possession of cocaine base for sale, impersonation of another, and obstruct/resist police officer.

11.     On or about September 7, 2022, investigators spoke with the facilities manager at Western Tow in El Cajon at their El Cajon lot. The manager said **Target Vehicle 1** was released to ROBERTS on August 24, 2022, after ROBERTS provided his California Driver's License, proof of registration, and payment. ROBERTS provided his cell phone number as 619-419-9474.

12.     On or about September 7, 2022, investigators traveled to **Target Location 1** and saw **Target Vehicle 1** parked in front of **Target Location 1**. Investigators saw ROBERTS exit **Target Location 1** and enter the backyard. ROBERTS then re-entered **Target Location 1**.

13.     Investigators queried **Target Vehicle 1** for License Plate Reader (LPR) information for any recent LPR records in both California and Arizona. Based on LPR

records, **Target Vehicle 1** completed trips from California to Arizona and back on the same dates that SHINGLETON purchased handguns in Arizona. The following details the LPR records in relation to SHINGLETON's firearms purchases.

    a. On June 6, 2022, SHINGLETON purchased a handgun at FFL Shooter's World in Phoenix, AZ.

        i. On June 5, 2022, at 6:41pm, LPR captured **Target Vehicle 1** on State Route 85 as it transitioned to Highway 10 east towards Phoenix and Glendale, AZ.

        ii. On June 6, 2022, at 2:26pm, LPR captured **Target Vehicle 1** at Peoria Avenue and 51st Street in Glendale, AZ.

        iii. On June 6, 2022, at 9:40pm, LPR captured **Target Vehicle 1** on Highway 10 as it traveled westbound towards State Route 85 junction towards Interstate 8 west.

    b. On June 18, 2022, SHINGLETON purchased three handguns from FFL Randall's Sporting Goods in Glendale, AZ.

        i. On June 18, 2022, at 9:14am and 9:58am, LPR captured **Target Vehicle 1** as it traveled eastbound along Highway 8 towards AZ.

        ii. On June 19, 2022, at 10:19am, LPR captured **Target Vehicle 1** as it traveled westbound along Highway 10 towards the State Route 85 junction to Interstate 8 west.

        iii. On June 19, 2022, at 10:59am, LPR captured **Target Vehicle 1** as it continued to travel westbound on Highway 10 towards CA.

    c. On August 20, 2022, SHINGLETON purchased four handguns from FFL Randall's Sporting Goods in Glendale, AZ. This includes the recovered handgun discussed above.

        i. On August 20, 2022, at 11:53am, 12:03pm, 12:30pm, and 12:42pm, LPR captured **Target Vehicle 1** as it traveled eastbound on Highway 8, towards AZ.

7

    ii.   On August 21, 2022, at 12:04am, LPR captured **Target Vehicle 1** as it traveled westbound on Highway 10 at the Highway 177 junction towards Interstate 15.

    iii.   On August 21, 2022, at 2:01am, LPR captured **Target Vehicle 1** as it traveled southbound on Interstate 15 towards San Diego County.

14.   On September 8, 2022, investigators contacted FFL Randall's Sporting Goods and spoke to counter manager Carlos Santamaria. Santamaria identified himself as the employee that had assisted SHINGLETON for all purchases at their location. Santamaria said that, during her first visit into the store on June 6, 2022, SHINGLETON was accompanied by an unknown black male adult, approximately 30 and 40 years old. SHINGLETON appeared to be alone during the subsequent visits in June and August 2022 and no associated vehicle was observed. Per Santamaria, during the multiple handgun purchase on August 20, 2022, SHINGLETON also purchased 9mm ammunition and two hi-capacity handgun magazines: a 15-round 9mm magazine and a 30-round 9mm magazine.

15.   On September 12, 2022, investigators again visited **Target Location 1** and observed **Target Vehicle 1** parked in front. At approximately 9:15am, investigators observed a black BMW sedan arrive. ROBERTS approached the black BMW's driver side door momentarily and then entered **Target Location 1**. ROBERTS then exited **Target Location 1** and walked to the BMW and out of view. The BMW left a few minutes later. The registered owner of the BMW was determined to be Lemore Lee LONG, Jr., another multi-convicted felon and known Skyline Piru Blood gang member. LONG's criminal history includes numerous arrests and convictions for being a felon in possession of a firearm, possession of a firearm with an obliterated serial number, participation in a criminal street gang, possession and transportation of a controlled substance, possession of cocaine base for sale, battery of a police officer, terroristic threats, assault with a deadly weapon with great bodily injury, and violations of both state parole, and federal probation.

16.   On September 15, 2022, investigators again traveled to **Target Location 1**. At approximately 9:10 am, investigators observed ROBERTS standing on the side of the

home under an attached awning. At approximately 9:15am, investigators observed **Target Vehicle 1** arrive at **Target Location 1**. The driver was later identified as ROBERTS' wife, Gerbrina ROBERTS, with a current address listed as **Target Location 1**. A query of Gerbrina ROBERTS revealed that G. ROBERTS has multiple felony convictions related to possession of a controlled substance, possession of cocaine base for sale, possession of marijuana/hash for sale, conspiracy to commit a crime, and transportation of a controlled substance.

17.     On September 20, 2022, investigators used law enforcement databases to learn that SHINGLETON's nephew is Spring Valley resident and known Skyline Piru Blood gang member Dajon SHINGLETON.

18.     Further on September 20, 2022, investigators used law enforcement databases to learn that, in addition to 619-419-9474, which ROBERTS provided as his cell phone number to the tow lot, ROBERTS also uses 619-859-9159. Investigators reviewed toll records for both numbers attributed to ROBERTS. Between June 4, 2022 and June 24, 2022, ROBERTS' x9159 phone number was in communication with SHINGLETON's phone number[1] 323 times. These communications occurred on three of the four dates in which SHINGLETON purchased firearms, and also occurred on June 5, June 6, June 18, and June 19, the same dates in which LPR records demonstrate **Target Vehicle 1** was traveling from California to Arizona and back.

19.     Toll records further confirmed that ROBERTS x9474 phone number had outgoing calls to SHINGLETON's phone on June 8, 2022, and June 10, 2022.

20.     Investigators queried ROBERTS in the ATF Firearm Licensing System, which holds records of individuals who currently hold, previously held, or applied for a Federal Firearm License (FFL). The database includes who has had their FFL revoked. ROBERTS has never had a FFL and is not in the process of applying for a FFL.

---

[1] SHINGLETON provided her phone number as 480-867-8905 on firearm acquisition forms during the purchases of handguns from FFL Randall's Sporting Goods in Glendale, Arizona. Law enforcement databases also confirmed that 480-867-8905 was listed to SHINGLETON at 201 W. Hermosa in Tempe, Arizona.

21.     To summarize, based on my training, experience, and knowledge of the investigation, I believe SHINGLETON is unlawfully purchasing firearms in Arizona for the purpose of further distribution to a felon, ROBERTS, to take back to San Diego, California. After SHINGLETON makes the purchase, SHINGLETON and ROBERTS then coordinate an in-person transfer. ROBERTS then transports the purchased firearms back to San Diego, California.

<u>PROCEDURES FOR ELECTRONICALLY STORED INFORMATION</u>
<u>AS TO ANY CELLULAR TELEPHONE</u>

22.     It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect any cellular telephone(s) seized pursuant to this warrant and subject them to analysis.  All forensic analysis of the data contained within the telephone(s) and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.  The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION OTHER THAN CELLULAR TELEPHONES

25.     With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, that may contain data subject to seizure pursuant to this warrant:

*Forensic Imaging*

a.     A forensic image is an exact physical copy of the hard drive or other media.  A forensic image captures all the data on the hard drive or other media without the data being viewed and without changing the data.  Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant.  It can take several hours to image a single hard drive - the bigger the drive, the longer it takes.

b.     In this case, computers and other electronic storage devices, including any necessary peripheral devices, will be transported offsite for imaging. After verified images have been obtained, the owner of the devices will be notified and the original devices returned within forty-five (45) days of seizure absent further application to this court.

//

*Identification and Extraction of Relevant Data*

1

2      c.     After obtaining a forensic image, the data will be analyzed to identify
3  and extract data subject to seizure pursuant to this warrant.  Analysis of the data following
4  the creation of the forensic image can be a highly technical process requiring specific
5  expertise, equipment and software. There are thousands of different hardware items and
6  software programs, and different versions of the same programs, that can be commercially
7  purchased, installed, and custom-configured on a user's computer system.  Computers are
8  easily customized by their users.  Even apparently identical computers in an office or home
9  environment can be different with respect to configuration, including permissions and
10 access rights, passwords, data storage, and security.  It is not unusual for a computer
11 forensic examiner to have to obtain specialized hardware or software, and train with it, in
12 order to view and analyze imaged data.

13      d.     Analyzing the contents of a computer or other electronic storage device,
14 even without significant technical challenges, can be very challenging.  Searching by
15 keywords, for example, often yields many thousands of hits, each of which must be reviewed
16 in its context by the examiner to determine whether the data is within the scope of the
17 warrant.  Merely finding a relevant hit does not end the review process for several reasons.
18 The computer may have stored metadata and other information about a relevant electronic
19 record – e.g., who created it, when and how it was created or downloaded or copied, when it
20 was last accessed, when it was last modified, when it was last printed, and when it was
21 deleted.  Keyword searches may also fail to discover relevant electronic records, depending
22 on how the records were created, stored, or used.  For example, keywords search text, but
23 many common electronic mail, database, and spreadsheet applications do not store data as
24 searchable text.  Instead, the data is saved in a proprietary non-text format.  Documents
25 printed by the computer, even if the document was never saved to the hard drive, are
26 recoverable by forensic programs because the printed document is stored as a graphic image.
27 Graphic images, unlike text, are not subject to keyword searches.  Similarly, faxes sent to
28 the computer are stored as graphic images and not as text.  In addition, a particular relevant

12

piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

e.     It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users that generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

f.     Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now

being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data.  And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer).  The sheer volume of data also has extended the time that it takes to analyze data.  Running keyword searches takes longer and results in more hits that must be individually examined for relevance.   And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

g.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including hashing tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files.  The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days of this warrant, absent further application to this court.

h.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

<u>GENUINE RISKS OF DESTRUCTION</u>

26.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.  In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

//
//
//
//

PRIOR ATTEMPTS TO OBTAIN DATA

27.     The United States has not attempted to obtain this data by other means.

REQUEST FOR SEALING

28.     This is an ongoing investigation of which the Targets Subjects are unaware. It is very likely, based upon the above, that evidence of the crimes under investigation exists in the direct and indirect control of the Target Subjects. There is reason to believe, based on the above, that premature disclosure of the existence of the warrants will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation. Accordingly, it is requested that these warrants and their related materials be sealed until further order of the Court.

CONCLUSIONS

29.     Based on all of the above, my experience and training, a review of documents and other relevant information I believe to be reliable, and discussions with other law enforcement officers, it is my opinion that the items listed in Attachment B are fruits, instrumentalities or evidence of a violation of the following enumerated offenses: Title 18, United States Code, Sections 922(a)(1)(A), 922(a)(3), and 922(g)(1) (Engaging in the Business of Distributing Firearms without a License; Unlicensed Transportation of Firearms; Felon in Possession of a Firearm, respectively). It is also my opinion that there is probable cause to believe that the items set forth in Attachment B are present at **Target Location 1** and **Target Vehicle 1** as more fully described in Attachments A-1 and A-2.

//

//

//

//

//

//

//

//

1

2      30.     With the above information, I formally request the issuance of a search

3  warrant authorizing a search of **Target Location 1** and **Target Vehicle 1**, and the seizure

4  of items described with particularity in Attachment B to the Application and Affidavit for

   Search Warrant.
5
       31.     I declare under penalty and perjury the foregoing is true and correct to the best
6
   of my knowledge and belief.
7

8

9                         _____

10                        J. Scott Wakelin, Special Agent
                          Bureau of Alcohol, Tobacco, Firearms and Explosives
11

12  Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
    by telephone on this 3rd day of October, 2022.
13

14  _____

15  The Honorable Daniel E. Butcher
    United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A-1**

**DESCRIPTION OF RESIDENCE TO BE SEARCHED**

Property located at 1418 Helix Street, Spring Valley, California 91977, including the garage and any attached storage structure or container found upon the residence's curtilage and ROBERTS' person, which is located in the Southern District of California.

The property to be searched is a one-story residence contained within a duplex. The duplex houses one additional and separate residence, #1420 that shares a wall with #1418. The duplex structure is tan with white trim.  1418 is approximately 850 square feet. The numbers "1418" are prominently displayed in black immediately to the right of the front door. There is a an approximate 4' fence that surrounds the side of the house and the backyard that separates the backyard to the neighboring residence #1420. There is an attached patio on the left side of the home that is also located within this same covered in a blue tarp. There is a small metal, tan in color outbuilding located in the backyard and within the same fence that surrounds the home. The home is situated along a dirt driveway off of Helix Street and immediately south of Harness Street to the north.  The front door of the home faces south.

### ATTACHMENT B

### Items to be Seized

There is probable cause that the following constitute evidence of violations of Title 18, United States Code, Sections 922(a)(1)(A), 922(a)(3), and 922(g)(1), and that they will be found in **Target Location 1** and **Target Vehicle 1**.

1. Firearms, including gun cases, ammunition, magazines, holsters, and firearm parts;

2. Records, documents, or photographs that pertain to firearms and/or transactions for firearms;

3. Records, documents, or photographs indicating prior trips or efforts to travel outside the State of California;

4. Records, documents, or photographs tending to demonstrate co-conspirators, criminal associates, or others involved in efforts to acquire, possess, transport, or sell firearms;

5. Items, records, or personal property, including but not limited to personal mail, checkbooks, utility bills, rent receipts, payment receipts, Department of Motor Vehicle records, mortgage statements, and vehicle registration information, tending to show identity of persons in ownership, dominion and control of **Target Location 1** and **Target Vehicle 1**;

6. Cell phones, laptops, computers, tablets, or any other form of digital device capable of storing electronic records, including any digital device found on Jarez ROBERTS' person. Upon seizure, the cell phones may be searched for electronic records, communications, and data including, but not limited to emails, messages, photographs, audio files, videos, and location data, for the time period from May 5, 2022 up to and including September 20, 2022:

    a. tending to identify efforts to acquire, possess, transport, or sell firearms;

b.      tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to acquire, possess, transport, or sell firearms;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to acquire, possess, transport, or sell firearms;

d.      tending to identify travel to or presence at locations relevant to efforts to acquire, possess, transport, or sell firearms;

e.      tending to identify the user of, or persons with control over or access to, the cellular telephone; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

The seizure and search of cellular telephones and other digital devices shall follow the procedures outlined in the supporting affidavit, which is incorporated herein in its entirety. Deleted data, remnant data, slack space, and temporary and permanent files on the digital devices may be searched for the evidence above.

All of the above constituting evidence of a violations of Title 18, United States Code, Sections 922(a)(1)(A), 922(a)(3), and 922(g)(1).